## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| William Coustin, # 15159-097, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-cv-1218-MJR |
| | ) | |
| J.S. WALTON, | ) | |
| UNKNOWN PARTIES, | ) | |
| WILLIAM MAYS, | ) | |
| BRAD WEESEL, | ) | |
| and RUNGY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff is an inmate in the United States Penitentiary in Marion ("Marion"). He brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He claims that Defendants have violated his First Amendment rights by prohibiting him from receiving a publication that was addressed to him. Plaintiff also seeks to have this suit certified as a class action. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

An issue of *Christian History Magazine* that was addressed to Plaintiff was rejected by prison officials because it contained depictions of nudity or sexually explicit content. The magazine contained the work of famed Renaissance artist Michelangelo. On or about May 14, 2015, Defendants John/Jane Doe #5 and/or #6 (mailroom employees) searched the publication and determined that it should not be delivered to Plaintiff. (Doc. 1 at 11.) Defendant Rungy

(head of the Publication Review Committee), along with committee members Defendants John/Jane Doe #2, #3, and #4, then reviewed the magazine and rejected it. Finally, Defendant Walton (Marion Warden) reviewed the publication, and similarly rejected it. (*Id.*)

Plaintiff filed a grievance over the rejection of his magazine. Defendant John/Jane Doe #1 (Administrative Remedy Coordinator), however, informed Plaintiff that appeals of the warden's grievance decision must be received within twenty days of the warden's response. Plaintiff, however, was not seeking to appeal the warden's response, but to receive an initial response by the warden as to his grievance. Plaintiff asked Defendant Mays (counselor) about the Administrative Remedy Coordinator's response. Mays told Plaintiff that he was wasting everyone's time and refused to provide Plaintiff with a BP-10 grievance appeal form. When Plaintiff protested, Mays told him "the conversation was over." (*Id.* at 12.)

Plaintiff argues that each of the Defendants ignored or acted outside of established case law, the controlling program statement, and the Code of Federal Regulations when they rejected his publication and his grievances. He specifically refers to *Amatel v. Reno*, 156 F.3d 192 (D.C. Cir. 1998) (finding that the "Ensign Amendment" regulations under which federal prison rejected inmates' *Playboy* and *Penthouse* magazines did not violate the First Amendment, and remanding case for factual inquiry into whether the regulations were unconstitutionally vague), and *Aiello v. Litscher*, 104 F. Supp. 2d 1068, 1070 (W.D. Wis. 2000) (denying summary judgment motion because of material factual disputes as to whether the regulation restricting nudity in prisoners' publications served legitimate penological interests and gave fair notice of what was prohibited). Plaintiff contends that his magazine should have been allowed, as it falls within the exemption permitting nudity that is illustrative of medical, education, or anthropological contents of the publication.

In addition to his First Amendment *Bivens* claim, Plaintiff asserts that the Defendants unlawfully conspired to commit a civil rights violation, as prohibited by 42 U.S.C. § 1985. (*Id.* at 1 at 13.)

Plaintiff seeks compensatory, punitive, and nominal damages. (*Id.* at 14.)  Further, he has filed a motion for a temporary restraining order ("TRO") and/or preliminary injunction (Doc. 2), directing Defendants to follow the regulations at C.F.R 540 and Bureau of Prisons policy statement 5266.11. Those provisions contain the exemptions for publications containing nudity illustrative of medical, educational, or anthropological content. Plaintiff has also filed a motion for injunctive and declaratory relief (Doc. 11), directing Defendant Mays to refrain from engaging in retaliatory conduct against Plaintiff.

### Merits Review Pursuant to 28 U.S.C. § 1915A

Under § 1915A, the Court is required to conduct a preliminary threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** First Amendment claim against Defendants Walton, Rungy, and John/Jane Does #2, #3, #4, #5, and #6, for improperly rejecting an issue of Plaintiff's *Christian History Magazine*;
>
> **Count 2:** First Amendment claim against Defendants Mays and Jane/John Doe #1, for denying Plaintiff's grievance over the rejection of his publication by the Defendants as outlined in Count 1; and
>
> **Count 3:** Claim under 42 U.S.C. § 1985 against all Defendants for engaging in a conspiracy to violate Plaintiff's civil rights.

Count 1 shall proceed for further review. Counts 2 and 3, however, fail to state a claim upon which relief may be granted, and shall be dismissed.

## A. Count 1 – First Amendment

The freedom of speech protected by the First Amendment is not merely freedom to speak; it is also freedom to read. *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638-39 (7th Cir. 2005) (citing *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *Lamont v. Postmaster General*, 381

U.S. 301, 306-07 (1965)). While inmates do not lose their constitutional rights upon being confined in prison, some restrictions on those rights may be imposed by prison authorities. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. *Turner* outlined four factors which courts must consider in evaluating whether a regulation restricting prisoners' rights is sufficiently reasonably related to legitimate penological interests to withstand constitutional scrutiny: "(1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising' the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Turner*, 482 U.S. at 89-91).

The regulation under which Defendants refused to allow Plaintiff's magazines into the prison was adopted pursuant to the 1996 "Ensign Amendment," which prohibits the use of Bureau of Prisons ("BOP") funds to pay for the distribution of commercial material that "is sexually explicit or features nudity." *See* Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208 § 614.

> As explained by the court in *Amatel v. Reno*, the BOP regulations
>
> assign rather narrow meanings to these terms: "nudity" means "a pictorial depiction where genitalia or female breasts are exposed"; "features" means that "the publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual onetime issues." Even material that otherwise would be said to "feature nudity" is excepted if it contains "nudity illustrative of medical, educational, or anthropological content."

*Amatel v. Reno*, 156 F.3d 192, 194-95 (D.C. Cir. 1998) (quoting from 28 C.F.R. § 540.72(b)).

The rationale for denying Plaintiff's publication was that it contained nudity and/or sexually explicit content. A factual record is necessary to determine Warton's actual penological interest or interests in rejecting the publication, in light of the exception for depictions that are "illustrative of . . . educational or anthropological content."

Accordingly, **Count 1** shall proceed for further consideration against the Defendants who were directly involved in reviewing and rejecting Plaintiff's *Christian History Magazine*: the mailroom personnel (Defendant John/Jane Does #5 and #6), Defendant Rungy and the other members of the Publication Review Committee (John/Jane Doe Defendants #2, #3, and #4), and Defendant Walton. Of course, Plaintiff must identify the John/Jane Doe Defendants by name before notice of this action may be served upon them.

**B. Dismissal of Count 2 – Denial and Mishandling of Grievance**

The only role played by Defendant Mays and Jane/John Doe #1, according to the complaint, was that these individuals reviewed, denied, and mishandled Plaintiff's grievance that he filed after his publications were rejected. Neither of these Defendants was involved in the original decisions to reject the magazines; instead, they merely reviewed the actions of other officials, after the fact. This does not constitute "personal involvement" in the denial of a constitutional right, and thus will not support a civil rights claim against Defendant Mays or Defendant Jane/John Doe #1. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). The alleged mishandling or denial of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

For these reasons, **Count 2** against Defendants Mays and Jane/John Doe #1 shall be dismissed from the action without prejudice.

### C.  Dismissal of Count 3 – Conspiracy

Plaintiff also seeks to hold all of the Defendants liable for conspiracy to violate his civil rights under 42 U.S.C. § 1985. However, he offers no factual basis to suggest that any of the Defendants conspired together with the aim of violating Plaintiff's First Amendment rights. A mere conclusory allegation that a conspiracy was afoot is not sufficient to support a claim—instead, there must be some factual underpinning in order for the claim to pass muster under § 1915A. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011) ."The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999)).

The fact that all the named Defendants were involved in enforcing the same rule, alone, does not establish a conspiracy. Because the complaint does not set forth any facts to suggest the existence of a conspiracy between any of the Defendants who rejected Plaintiff's magazines, **Count 3** shall be dismissed without prejudice.

### Dismissal of Defendant Weesel

Plaintiff lists Defendant Weesel among the parties, and describes him as a counselor who rejected Plaintiff's grievance/informal remedy. (Doc. 1 at 3-4.) However, Plaintiff does not

mention him again in the body of the complaint.

Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

Plaintiff's brief description of Defendant Weesel suggests that he was merely involved in the review of Plaintiff's grievances. If so, he would be subject to dismissal from this action for the reasons discussed in Count 2 above. In any event, Defendant Weesel shall be dismissed without prejudice because Plaintiff did not describe any specific claim against him.

### Motion for TRO/Preliminary Injunction (Doc. 2)

Insofar as this motion seeks a temporary restraining order (TRO), it is **DENIED IN PART**. However, that portion of the motion which seeks a preliminary injunction is **REFERRED** to a United States Magistrate Judge for further consideration.

A TRO is an order issued without notice to the party to be enjoined that may last no more than fourteen days. A TRO may issue without notice:

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b). Without expressing any opinion on the ultimate merits of Plaintiff's claims for relief, the Court concludes that a TRO should not issue in this matter. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*. Again, Plaintiff's request for a preliminary injunction shall undergo further review.

### Motion for Class Certification (Doc. 3)

Plaintiff's Motion for Class Action and Certification (Doc. 3) shall also be referred to a U.S. Magistrate Judge for further consideration. The Court notes that the Federal Rules permit class actions to be maintained only if the class representative (in this case the *pro se* Mr. Coustin) "will fairly and adequately protect the interests of the class," FED. R. CIV. P. 23(a)(4), and that "[e]very court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action." *Lee v. Gardinez*, No. 11-cv-570-GPM, 2012 WL 143612, at *1 n.1 (S.D. Ill., Jan. 18, 2012) (quoting *Craig v. Cohn*, 80 F. Supp. 2d 944, 946 (N.D. Ind. 2000) (internal citations and quotation marks omitted)); *see also Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding it would be plain error to permit imprisoned *pro se* litigant to represent his fellow inmates in a class action).

### Motion for Injunctive and Declaratory Relief (Doc. 11)

Plaintiff's Motion for Injunctive and Declaratory Relief (Doc. 11) seeks an order enjoining Defendant Mays from engaging in retaliatory conduct against Plaintiff. Plaintiff alleges that he has received three incident reports resulting in a reduction in pay and the loss of his institutional assignment. Although he states that one of the incident reports was "directly related to the instant case," the only incident he discusses is one involving retaliation against Plaintiff for helping another inmate pursue a grievance. (*Id.* at 1-2.) Plaintiff's motion has nothing to do with

the underlying complaint. Accordingly, it is **DENIED**. He may proceed with the claim addressed in motion in an amended complaint in this case, or as a complaint in a new, additional case.

## Disposition

COUNTs **2** and **3** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants **WEESEL, MAYS,** and **JANE/JOHN DOE #1** are **DISMISSED** from this action without prejudice.

As to service of process on Defendants **WALTON** and **RUNGY,** service must be effectuated within the 120 day time limit imposed by Federal Rule of Civil Procedure 4(m). Plaintiff was denied leave to proceed *in forma pauperis* in this action, and has since paid the filing fee in full. In such a case, the Court will not automatically appoint the United States Marshal to effect service of process upon Defendants. However, if Plaintiff desires to request the appointment of the United States Marshal to serve process on the Defendants, Plaintiff shall file a motion for service of process at government expense, within 35 days of the date of entry of this order (on or before April 13, 2016). The Clerk of Court is **DIRECTED** to mail to Plaintiff the Court's Pro Se Litigant Guide, containing forms and instructions for filing said motion.

If Plaintiff does not timely file a motion for service of process at government expense, it shall be Plaintiff's responsibility to have Defendants **WALTON** and **RUNGY** served with a summons and copy of the complaint pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that only a non-party may serve a summons.  FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshal, the Clerk of Court shall prepare a summons and copies of the complaint and this Memorandum and Order for each Defendant, and shall forward the same to the United States Marshal for service. If Plaintiff does not file a motion for service of process at government expense within 35 days as ordered, the

Clerk shall then prepare a summons for each Defendant, and shall forward the summonses and sufficient copies of the complaint and this Memorandum and Order to Plaintiff so that he may have Defendants served.

Service cannot be accomplished on the Unknown (John/Jane Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff is **ORDERED** to serve upon Defendants or, if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or defendant's counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the United States Marshal with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for effecting service of process. Any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file or disclosed by the Marshal.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 9, 2016**

**s/ MICHAEL J. REAGAN**
**Chief Judge**
**United States District Court**